PEOPLE *v.* MEDCOFF.

1. CRIMINAL LAW—PUBLIC TRIAL—TRIAL BY JURY—PRESENCE OF
   ACCUSED.
   The "public trial" guarantee to a criminal prosecution is con-
       cerned with the presence of the public in general and is not
       to be confused in specific application with the right to trial
       by jury and its derivative rights such as the presence of the
       accused (Const 1908, art 2, § 19).

2. SAME—FELONY—MISDEMEANOR—PRESENCE OF ACCUSED—WAIVER.
   While one accused of crime has the right of a trial by an im-
       partial jury and if accused of felony, he may not be tried
       unless personally present during the trial; if he be complained
       against for a misdemeanor, he may, at his own request,
       through an attorney, duly authorized for that purpose, by
       leave of court, be put on trial in his absence (Const 1908, art
       2, § 19; CL 1948, § 768.3).

3. SAME—MISDEMEANOR—PRESENCE OF ACCUSED AT TRIAL.
   One accused of a misdemeanor punishable by a maximum sen-
       tence of 2 years in the State prison is entitled to be present
       at every stage of the trial where his substantial rights may be
       affected by the proceedings and where his presence relates to
       the fullness of his opportunity to defend against the charge
       (Const 1908, art 2, § 19; CL 1948, § 768.3).

4. SAME—PRESENCE OF ACCUSED OF INVESTIGATION OF JUROR FOR
   MISCONDUCT DURING TRIAL.
   The right of one accused of crime to a trial by an impartial
       jury and to be present at all stages of the trial where his

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur, Criminal Law § 140.
[1] Exclusion of public during criminal trial.  156 ALR 265.
[2, 3] 14 Am Jur, Criminal Law §§ 191, 199.
[4, 6] See, generally, 14 Am Jur, Criminal Law § 195.
[5] 39 Am Jur, New Trial § 70 *et seq.*
[7] 14 Am Jur, Criminal Law §§ 142, 191; 39 Am Jur, New Trial
    § 36.

substantial rights might be affected are fundamental rights, hence, the accused has a right to be present when the court conducts an examination of the jury to ascertain whether or not there has been misconduct on the part of a juror during the progress of the trial (Const 1908, art 2, § 19).

5. SAME—MISCONDUCT OF JUROR—NEW TRIAL.

    Misconduct on the part of a juror during the progress of a trial of a criminal prosecution is presumptively a ground for a new trial (CL 1948, § 769.26).

6. SAME—MISCONDUCT OF JUROR—INVESTIGATION DURING TRIAL—EXCLUSION OF DEFENDANT.

    The effect of the abrogation of defendants' right to be present during an investigation of a juror for claimed misconduct during a trial of a misdemeanor is not to be determined from the result and review thereof of the court's inquiry during the trial but rather from the mere fact that during the inquiry defendants were not given an opportunity to exercise those privileges which their right to be present affords them, injury, constituting miscarriage of justice, being conclusively presumed (Const 1908, art 2, § 19; CL 1948, §§ 768.3, 769.26).

7. GAMING—EVIDENCE—MISCONDUCT OF JUROR—EXCLUSION OF DEFENDANT FROM INVESTIGATION.

    Convictions of defendants for aiding, assisting and abetting in keeping and maintaining a gambling room and knowingly assisting in keeping and occupying a common gambling house are reversed and new trials granted, not because the verdict of the jury was against the great weight of the evidence but because defendants and their counsel as well as the public were excluded from the courtroom while the trial judge conducted an investigation to ascertain whether or not there had been misconduct on the part of a juror during the trial (Const 1908, art 2, § 19; CL 1948, §§ 750.302, 750.303, 768.3).

Appeal from Genesee; Gadola (Paul V.), J. Submitted October 13, 1955. (Docket No. 86, Calendar No. 46,156.) Decided December 1, 1955.

LaVone Medcoff and Mack Myers were convicted of assisting in keeping and maintaining a gambling room and a common gambling house. Reversed and new trial ordered.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Jerome F. O'-Rourke,* Prosecuting Attorney, and *Robert A. Steadman,* Assistant Prosecuting Attorney, for plaintiff.

*Maile & Leach* and *Herman F. Lande* (*Marvin W. Reider,* of counsel), for defendant.

BUTZEL, J. LaVone Medcoff and Mack Myers were found guilty of aiding, assisting and abetting in keeping and maintaining a gambling room, and knowingly assisting in keeping and occupying a common gambling house at 830–1/2 Leith street in the city of Flint, Michigan, contrary to CL 1948, § 750.-303 (Stat Ann 1954 Rev § 28.535) ; CL 1948, § 750.302 (Stat Ann 1954 Rev § 28.534). They have appealed from a denial of their motion for new trial and fundamentally raise but 1 question. The record points overwhelmingly to their guilt and it is not claimed that the verdict of the jury is against the great weight of the evidence.

On the initial day of the 3-day trial before a jury the first 3 witnesses for the State seemed to be suffering from amnesia of some sort. One witness, who lost the money he had in his pocket as well as the proceeds from cashing his pay check and who summoned the police, claimed he could not positively identify the defendants. The other 2 gave testimony of like purport. Another witness cashed his pay check at the gambling house. The judge was so exasperated that he ordered their arrest on grounds of perjury after they had finished their testimony. The trial continued with the testimony of other persons apprehended in the raid some of whom had their bail bonds furnished and fines paid by unidentified persons. It is evident that the court had to cope with a very difficult situation.

On the second day of the trial one of defendants' attorneys, not among those who now represent them on appeal, stated that he had received information from a "very reliable source" and "from a member of the jury" that some members of the jury knew of the court's commitment of the 3 witnesses for perjury. He was of the opinion that they had probably obtained this information from the local newspaper. He asked that a mistrial be declared because of possible prejudice to the defendants. The court denied the motion and after the attorney said that it was the duty of the court to examine the jurors, the court stated:

"I will take care of it at the proper time."

At the conclusion of the testimony of Marvin Anderson, in the above-entitled cause, and after a recess had been announced, and all persons excluded from the courtroom, other than the court reporter and jury, the following occurred:

"*The Court:* There has been a serious accusation made against some members of this jury in this matter. It has been reported some members of this jury have been talking about this case in the hall, some member of this jury has talked to Louis McGregor relative to this case.

"*Juror No 11:* I talked with Louis McGregor this morning, but not concerning this case.

"*The Court* (to juror): You did not say anything concerning the case?

"*Juror No 11:* I did not say concerning the case.

"*The Court:* If he said that he is wrong?

"*The Juror:* I did not say anything about the case.

"*The Court:* I warned you people in the first place you were not to talk with the attorneys or anybody else here. I don't know why you cannot follow your instructions. It has been reported that you talked

to Mr. McGregor; Mr. McGregor reported you discussed this case with him.

"*The Juror:* I remember I said something of the case; I did not talk much about it.

"*The Court:* How much did you discuss about it?

"*The Juror:* He asked me what kind of a case it was. I said a gambling case.

"*The Court:* That is all you said?

"*The Juror:* Yes.

"*The Court:* You are sure of it?

"*The Juror:* Yes.

"*The Court:* None of the rest of you discussed this matter at all with anyone?

"(Jurors answer 'No.')

"*The Court:* You are sure that is the only thing you said to Mr. McGregor?

"*Juror No 11:* That is all this morning.

"*The Court:* You did not say anything about any matters that occurred here or any matters that you heard here?

"*The Juror:* No, sir.

"*The Court:* All right. Now, remember, I told you you were not to discuss this matter with anyone, or allow anyone to discuss it with you, or read anything in the newspapers or anything else. That is final. In other words, of course, you know the case is decided upon testimony given upon the witness stand, and any conversation with anyone else you are not supposed to receive, any information except what goes on from the witness stand. This is the first time in Flint that there has been an accusation concerning any errors of that kind in this court. It is for the court's protection in the matter.

"*Juror No 3:* We are not supposed to say anything about it to our families?

"*The Court:* Do not even discuss it among yourselves. Before discussing any case you are sitting on, wait until you get all through, and you just decide it upon what is here."

The relationship, if any, between this inquiry and the previous motion for mistrial is not at all clear.

However, it is a fact that neither the defendants nor their counsel nor the prosecuting attorney were present during the proceeding. It is not apparent whether the exclusion from the courtroom of "all persons" meant the public as well, but such is not pertinent to the basis of our decision.

It is counsels' contention that defendants' constitutional right to a "public trial" was abridged by the court's investigation of the jury. While fundamental to a criminal proceeding the "public trial" guarantee* is concerned with the presence of the public in general and should not be confused in specific application with the right to trial by jury and its derivative rights such as the presence of the accused. The accused is not necessarily the "public" referred to but his presence is required by other rights secured to him in the same constitutional provision. If the order of exclusion included the public in this case, and apparently it did, it could be that the "public trial" guarantee would be an issue. However, counsels' argument revolves solely around the absence of the defendants. While, because of their common and fundamental end, the 2 rights may in some cases overlap, we do not consider the right to a "public trial" as being involved in this case and counsels' rather unique argument in that regard is not the basis for our decision. Rather, we are concerned with the right of trial by jury and its concomitant, the right of an accused to be present at such trial.

The Constitution of the State of Michigan (1908), art 2, § 19, guarantees to an accused in every criminal prosecution the right of a trial by an impartial jury. By statute, CL 1948, § 768.3 (Stat Ann 1954 Rev § 28.1026):

---

* See Const 1908, art 2, § 19.—REPORTER.

"No person indicted for a felony shall be tried unless personally present during the trial; persons indicted or complained against for misdemeanors. may, at their own request, through an attorney, duly authorized for that purpose, by leave of the court,. be put on trial in their absence."

Defendants herein were tried and convicted of misdemeanors. While some jurisdictions have distinguished between one accused of a felony or capital crime and one accused of a misdemeanor or noncapital crime for purposes of this right, we think the fair implication of this statute is that a misdemeanant punishable by a maximum sentence of 2 years in the State prison, as well as a felon, is entitled to be present. The aforementioned right to trial by an impartial jury, from which the right to be present is derived, applies to "every criminal prosecution."

The United States supreme court in *Lewis* v. *United States,* 146 US 370 (13 S Ct 136, 36 L ed 1011), a case upholding the right of a defendant to be present when jurors are challenged, said (p 372):

"A leading principle that pervades the entire law of criminal procedure is that, after indictment found,. nothing shall be done in the absence of the prisoner."

In *Hopt* v. *Utah,* 110 US 574 (4 S Ct 202, 28 L ed 262), the court, under a statute of the territory of Utah similar to that in Michigan, above quoted, condemned the practice of trying challenges for bias of juror out of the presence of the accused, saying (p 578):

"The prisoner is entitled to an impartial jury composed of persons not disqualified by statute, and his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors. The necessities of the defence may not be met by

the presence of his counsel only. For every purpose, therefore, involved in the requirement that the defendant shall be personally present at the trial, where the indictment is for a felony, the trial commences at least from the time the work of empanelling the jury begins."

Later decisions of the supreme court may have limited somewhat certain statements made in the *Hopt* and *Lewis Cases, supra,* see *Howard* v. *Kentucky,* 200 US 164 (26 S Ct 189, 50 L ed 421); *Diaz* v. *United States,* 223 US 442 (32 S Ct 250, 56 L ed 500, Ann Cas 1913C, 1138); *Frank* v. *Mangum,* 237 US 309 (35 S Ct 582, 59 L ed 969), but they have been concerned with "due process" principles and have recognized the distinction which must be drawn between common-law requirements of trial by jury and that which the States might enact or countenance without contravening the 14th Amendment "due process" requirement. In *Snyder* v. *Massachusetts,* 291 US 97 (54 S Ct 330, 78 L ed 674, 90 ALR 575), while majority and dissent disagreed as to whether "due process" required the presence of the accused at a view by the jury of the scene of the crime, both agreed that defendants have the right to be personally present at every stage of the trial where their substantial rights may be affected by the proceedings and where their presence relates to the fullness of their opportunity to defend against the charge.

To be sure when considering what is the "trial" for purposes of this question we can exclude formal and preliminary matters or matters occurring after the hearing on the merits or rendition of the verdict, as well as other matters. See *Snyder* v. *Massachusetts, supra;* generally, 26 ALR2d 762, 770; 150 ALR 764; 144 ALR 199; 23 ALR2d 456; 96 ALR 508, 515; 70 ALR 1072. This Court has held that the accused need not be present when the jury, after having departed to deliberate, returns and requests a reitera-

tion of instructions, *People* v. *LaMunion,* 64 Mich 709, or testimony given during the trial, *People* v. *Carey,* 125 Mich 535, or asks whether certain testimony had been stricken, *People* v. *Jaskulski,* 236 Mich 237; but *cf., People* v. *Burkhart,* 165 Mich 240. A defendant's voluntary absence at the rendition of the verdict does not vitiate that verdict, *Frey* v. *Calhoun Circuit Judge,* 107 Mich 130, nor is his absence when a panel of 12 jurors was sworn (only 1 of which was on the jury which finally heard the case), prejudicial. *People* v. *Kregger,* 335 Mich 457. Apparently the presence of the accused is not required at a view taken by the jury. *People* v. *Raider,* 256 Mich 131; *People* v. *Kasem,* 230 Mich 278. It would also seem that an accused may waive his right to accompany the jury to a view. *People* v. *Auerbach,* 176 Mich 23, 47 (Ann Cas 1915B, 557). We have indicated that failure of counsel, with knowledge, to object at the time is a pertinent consideration. See *People* v. *Raider, supra; People* v. *Kasem, supra; People* v. *Carey, supra; People* v. *Kregger, supra.* It may be noted that in the instant case the record presents no question of waiver or such action of counsel, hence, *State* v. *Bragdon,* 136 Minn 348 (162 NW 465), may be distinguished.

However, nothing in the nature of evidence should be taken in the absence of the accused. *People* v. *Hull,* 86 Mich 449, 466; *People* v. *Auerbach, supra.* While in particular instances we may have affirmed the convictions, we have considered as bad practice, proceedings had in the absence of the accused. *People* v. *Jaskulski, supra; People* v. *Kasem, supra.* There is involved in the instant case the right of an accused to be present at a proceeding where the court considers existence or nonexistence of misconduct on the part of the jurors. It goes without saying that the right to a trial by an impartial jury is a most fundamental one. The right of the accused

to be present at all stages of the trial where his substantial rights might be affected is an equally fundamental one. Misconduct on the part of a juror during the progress of a trial is presumptively a ground for a new trial. *Cooper* v. *Carr*, 161 Mich 405; *cf.*, *In re Ascher*, 130 Mich 540 (57 LRA 806). Courts have held that the presence of the accused is required when jurors are being examined as to their qualifications. *State* v. *Thomas*, 128 La 813 (55 So 415); *State* v. *Smith*, 90 Mo 37 (1 SW 753 [as *State* v. *Crockett*], 59 Am Rep 4); *State* v. *Martin*, 120 W Va 229 (197 SE 727). The making or trying of challenges to jurors is an essential part of the trial and requires the presence of the accused. *Lewis* v. *United States, supra; Hopt* v. *United States, supra.* It would seem that the examination of a jury during the progress of the trial as to alleged misconduct affects a defendant's substantial rights to a trial by an impartial jury at least as much, if not more, than does an examination for qualifications, or the making of challenges. All concern the impartiality of the jury which cannot be considered a preliminary, formal or inconsequential matter.

We recognize that all that transpired between judge and jurors as well as the court's conclusion that there had been no misconduct is in the record before us. Therefore, it is argued that defendants have shown no prejudice. However, the abrogation of defendants' right to be present is not determined from the result and review thereof of the court's inquiry but rather from the mere fact that during the inquiry defendants were not given an opportunity to exercise those privileges which their right to be present affords them. Where such fundamental rights are denied, the guilt or innocence of the accused is not concerned and neither party is put to the burden of showing actual injury or prejudice or the lack of it. Injury is conclusively pre-

sumed. *Cf., People* v. *Micalizzi,* 223 Mich 580; *People* v. *Murray,* 89 Mich 276, 290 (14 LRA 809). In the latter case, we said:

"Neither is this case* an authority for what was done in Murray's case. The court did not order the courtroom to be cleared of spectators, but the lobby outside. There is nothing in the facts of that case which assimilate in any degree to the trial of Murray. Here no violence is shown, no disorderly conduct, no violent or disgraceful action on the part of Murray, which tended to lessen the dignity of the court, or bring the administration of justice into disrepute.

"I cannot accede to the correctness of the proposition intimated in that case that, if a public trial has not been accorded to the accused, the burden is upon him to show that actual injury has been suffered by a deprivation of his constitutional right. On the contrary, when he shows that his constitutional right has been violated, the law conclusively presumes that he has suffered an actual injury. I go further, and say that the whole body politic suffers an actual injury when a constitutional safeguard erected to protect the rights of citizens has been violated in the person of the humblest or meanest citizen of the State. The Constitution does not stop to inquire of what the person has been accused or what crime he has perpetrated; but it accords to all, without question, a fair, impartial, and public trial."

Nor is this a matter which can be disposed of under the statute which permits affirmance of criminal judgments in spite of certain errors, where there has been no miscarriage of justice. CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096). As we have interpreted defendants' right to be present when the court is inquiring into possible misconduct of a juror, we

---

* *People* v. *Kerrigan,* 73 Cal 222 (14 P 849), in which action was taken on behalf of defendant, as well as to preserve order.—REPORTER.

cannot justify affirmance on the ground that it is a matter of "pleading or procedure" to which the statute refers. Though we may think that the record more than justifies the convictions obtained we cannot condone or countenance the practice here indulged.

Accordingly, while we do not discharge defendants as their counsel ask, we reverse the convictions and order a new trial. *People* v. *Murray, supra,* at 292.

CARR, C. J., and SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.